## Brown, Administrator, v. Travelers Insurance Companies

*Norman Shigon,* for plaintiff.

*Edward W. Madeira, Jr.* and *John B. Hannum,* for defendant.

ULLMAN AND BARBIERI, JJ., April 29, 1965.—This trespass case comes before us on preliminary objections filed by defendant, Travelers Insurance Companies, questioning therein by demurrer the right of plaintiff, Curtis A. Brown, Administrator of the Estate of Curtis E. Brown, to state any tortious claim against it on behalf of decedent, an employe of Children's Hospital. Defendant was the workmen's compensation insurance carrier for Curtis E. Brown's employer, Children's Hospital.

The complaint alleges that decedent, Brown, on April 7, 1963, while he was engaged in his duties in the dry ice section of his employer's premises, was overcome by carbon dioxide poisoning, and died of it. It further alleges, in brief, that the death was directly caused by

defendant insurance companies' neglect in failing to adequately and carefully inspect the place where decedent worked and the machinery and equipment used there by him.

The gravamen of the complaint, stated simply, is that defendant had issued its policy of workmen's compensation insurance to decedent's employer and, while having no obligation under the workmen's compensation law itself, did undertake, nevertheless, "both by its contract of insurance and by affirmative acts on the part of its agents, servants, employees and representatives, to inspect the work places, machinery and equipment used by the employer of plaintiff's decedent, and to apprise, counsel and recommend to said employer as to the existence of all unsafe, hazardous and dangerous and negligent conditions of said work places, machinery and equipment used by employer of plaintiff's decedent;" that "the said defendant in advertising, brochures, pamphlets and statements, both oral and otherwise, has advised, informed and otherwise indicated to the employer of plaintiff's decedent at and prior to April 7, 1963, that it had undertaken, agreed and otherwise set forth that it would promulgate, institute and establish a proper safety program with proper safety procedures on the premises of the employer of plaintiff's decedent and that it would make any and all necessary inspections of the premises, work places, machinery and equipment used by said employer in order to properly institute, establish and install a safety program and recommend and install proper protective devices and periodic inspection programs in order to make safe the work places, machinery and equipment on the premises of said employer in order to minimize, reduce and eliminate any accidents upon the said premises;" that "having undertaken as its responsibility and obligation the security and safety on the plant and premises of the employer

of plaintiff's decedent, including the section where dry ice was maintained and in which section plaintiff's decedent was employed, the defendant was negligent, careless and reckless in causing and/or permitting plaintiff's decedent to sustain personal injuries while in the course of his employment, resulting in his death, for the following reasons: . . ."

The facts properly alleged in the complaint must, of course, for the purposes of this proceeding be accepted as true. It is equally true that allegations of law are in no wise and to no extent binding on defendant nor on the court. It is by no means easy to ascertain into which of these categories many of plaintiff's allegations belong, and this is not made easier by the sweeping nature and indefiniteness of many of the statements.

Defendant's position on its demurrer is that since no such claim will lie by, or on behalf of, an employe against the employer itself by reason of the immunity from such common-law suits granted to employers in section 303 of the Act of June 2, 1915, P. L. 736, art. III, 77 PS §481, that the suit also cannot be maintained against the workmen's compensation insurance carrier, since it is, in effect, the alter ego of the employer, acting solely and precisely as to workmen's compensation obligations of the employer in the place and stead of the employer, being identified as "employer" within the intendment of the legislation, or otherwise being so related to the employer as to be entitled to avail itself of the employer's statutory immunity.

The considerations that have been advanced on both sides of the issue herein presented may be classified loosely, for convenience of consideration, as (1) statutory, (2) contractual.

(1) Statutory Considerations. Of course, the workmen's compensation system is the product of a statutory form of "contract" created between employer and

employe by the statute through the failure of either of them to reject the act, under the provisions of which the limited and fixed liability schedules of payments are paid, without regard to fault of the employer, in lieu of what had been the employe's quite difficult form of remedy against the employer at common law. The employe's recovery is limited in amount, basically less than common-law or third-party proceedings might afford.[1] However, the employe injured in the course of his employment receives the amount fixed by the act with certainty and with promptness and without being subject to any of the three common-law defenses which had previously been greatly effective.[2] The employer may no longer be sued by the employe in the courts for any injuries sustained in the course of his employment. The question herein, of course, is whether the insurer who contracts with the employer to assume its workmen's compensation obligations to injured employes must do so without benefit of its insured's immunity from employe claims not covered by the Workmen's Compensation Act, nor by the insurance policy contract.

Because of the arguments presented herein, it is pertinent to examine the structure of the statute which consists of five articles as follows:

Article I—Interpretation and Definitions; article II—Damages by Action at Law; article III—Elective Compensation; article IV—Procedure and article V—General Provisions.

---

[1] Statistics, however, showed that previous to the passage of the original Workmen's Compensation Act of 1915, suits by employes in the courts were frequently not brought, rarely successful, and often meager in amount.

[2] Those three defenses were that the injury was caused in whole or in part by the negligence of a fellow employe; or that the employe had assumed the risk of the injury; or that the injury was caused in any degree by the negligence of such employe.

Articles II and III contain principally the "substantive" or "interior" phases of the statutory system, the other three articles being "exterior" or ancillary to the two main divisions. The only pertinent provision in article V is in section 502, it being of significance because it emphasizes the importance and inseparability of articles II and III, as follows:

"Section 502. If any provision of this act shall be held by any court to be unconstitutional, such judgment shall not affect any other section or provision of this act, except that articles two and three are hereby declared to be inseparable and as one legislative thought; and if either article be declared by such court void or inoperative in an essential part, so that the whole of such article must fall, the other article shall fall with it and not stand alone."

Basically, article II relieves the employer of his common-law defenses and includes the new liability of the "statutory employer".

Article III contains the workmen's compensation liability provisions, and includes the immunity provisions with which we are here concerned as set forth in section 303 thereof. Referring to the "agreement," the statutory election to accept the compensation system, this provision reads as follows:

"Section 303. Such agreement shall constitute an *acceptance of all the provisions of article three* of this act, and shall operate as a surrender *by the parties* thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents." (Italics supplied.)

As written, this provision purportedly bars all forms of remedies for work injuries by an employe who has accepted the act, unless the employer is brought into a trespass action as an additional defendant by some third-party tortfeasor with whom the employer has been found jointly responsible. See Hyzy v. Pittsburgh Coal Company, 384 Pa. 316, 318 (1956). In such event, the employer is liable only for contribution limited in amount by section 303 to the workmen's compensation to which the employe would be entitled from defendant or its insurance carrier: Maio v. Fahs, 339 Pa. 180 (1940).

Certainly, in view of the broad language in section 303, there is a very heavy burden upon any plaintiff who seeks to recover in trespass for work injuries for which defendant insurance company has already paid workmen's compensation. To do so, defendant must establish that defendant insurance carrier is outside of the employer's immunity as set forth in section 303.

Until the quite recent flurry of cases like the instant one, it has always been accepted without question that the workmen's compensation carrier, being in the status of the employer, could not validly be sued as a "third party". In Gallivan v. Wark Co., 288 Pa. 443 (1927), the court said, at page 453:

"Where an employee receives compensation under article III for an injury in the course of his employment, he cannot thereafter sue either the paying employer or his insurance company or one standing in the relation of an employer who accepts the act. Section 303 prevents any such duplication."

In the apparent "trigger case" for the new line, Smith v. American Employers' Insurance Co., 102 N. H. 530 (1960), the court so interpreted the New Hampshire statute as to permit the compensation carrier to be sued as a third party. This startling innovation and departure from the preexisting and estab-

lished rule, not surprisingly, was promptly overruled by the New Hampshire legislature: New Hampshire RSA 281:14. For obvious reasons, and perhaps pointing up the futility of the position of this plaintiff and others in similar recent suits, it can be anticipated with reasonable certainty that legislative review in Pennsylvania would be prompt should the view of plaintiff herein prevail in the courts of this Commonwealth. Such a ruling by the courts would be devastating and harmful to both employer and employe. Furthermore, it would be seriously damaging to all private insurance companies because of the great competitive advantage which would inure to the State Workmen's Insurance Fund and the self insurers.

Section 305 of article III of The Workmen's Compensation Act provides:

"Every employer liable under this act to pay compensation shall insure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company, or mutual association or company, authorized to insure such liability in this Commonwealth, unless such employer shall be exempted by the Bureau from such insurance." [3]

Turning to the applicable statutory provisions, it is noted that the only provision dealing with the status of the insurance carrier as compared with that of the employer is contained in section 401, which reads as follows:

--------

[3] The balance of section 305 provides for the machinery of employers obtaining self insurer status and the penalties imposed on any employer who fails to comply with the provisions of this section. A careful examination of that part of section 305 will make clear that only large employers of substantial means can put up the securities necessary to obtain and maintain self insurer status. Employers, usually the smaller ones who are unable to post with the Commonwealth securities to guarantee payment of all compensation obligations, are unable to attain the status of self insurers.

"The term 'employer', when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent, *or his insurer if such insurer has assumed the employer's liability*, or the fund if the employer be insured therein." (Italics supplied.)

The definition in article I, referred to in section 401, reads as follows:

"Section 103. The term 'employer', as used in this act, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it."

In the case of Mays v. Liberty Mutual Insurance Company, 323 F. 2d 174, 178, filed August 28, 1963, Judge Staley for the United States Court of Appeals for the Third Circuit, turned the meaning of section 401 against defendant therein by emphasizing the words "when used in this article". He reasoned that "this article" had to do only with "procedure"; that, therefore, this legal alter ego relationship must be disregarded for the alleged third-party purposes because of the "clear" language in section 103, supra. Judge Staley stated:

"From this it is clear that, rather than expanding the principal definition of 'employer', section 401 serves only this limited purpose. In this respect the definition in that section supports the position of Mays, for when the legislature intended to equate the insurer with the employer, it did so specifically in unequivocal terms. Its failure to do so in the clear, unambiguous definition found in section 103, 77 Purdon's Pa. Stat. Ann. §21, is an indication that it did not intend to blend their jural personalities."

With this conclusion, we cannot agree.

As is observed, Judge Staley's conclusion is arrived at by his view that the language of section 103 is to be given superior force to that of section 401, for he refers to the former as the "principal definition". One may ask, why so? We have noted previously herein that article I (including section 103) and article IV (including section 401), are neither of them substantive. We have termed them "external" articles, as compared with the legislatively designated substantive articles II and III. In short, the first and fourth articles are ancillary, descriptive, unsubstantive and are both basically procedural in significance. It would have been inappropriate for the legislature to have included the workmen's compensation insurance carrier as synonymous with employer in section 103 of article I of the act, because that section was delineating the status of employer and employe for the limited purposes of their status as parties to the statutory agreement to accept the compensation system which was set up in article III. It should also be remembered that the Workmen's Compensation Act providing for liability without fault was a revolutionary concept in 1915 when it was first enacted, and the Constitution of the Commonwealth of Pennsylvania had to be amended in order to make it possible. While it was made mandatory for the employer either to carry insurance in a private company or with the State Workmen's Insurance Fund, or to become a self insurer, that did not appear nor did it have any relevance until after the act had been accepted by both employer and employe under the provisions of article III. Chronologically speaking, it would be pointless and fruitless to discuss the insurance carrier in article I of the act, because the need for insuring could not arise until article III had become operative. It is the "master" alone (who, before he accepts the act, has no need for a compensation insurance carrier), who is concerned

with the substantive provisions of articles II and III. The employer not only has the right to reject the act, but frequently has done so. See Rich Hill Coal Company v. Bashore, 334 Pa. 449 (1939). Article IV sets up all of the provisions for every form of process and remedy available to a claimant and the manner in which liability of the employer to him is to be met, satisfied, settled, concluded and released; so that even under Judge Staley's conception of article IV, and section 401, the insurance carrier shares every one of the obligations, prerequisites, benefits and release rights of the employer. Thus, we find the legislature stating in section 401 that the employer, who had to be defined in section 103 solely as the "master" for articles II and III purposes, would, for all remedial or procedural purposes, be taken to be a complex entity, including within its scope the compensation insurer (be it a private company or the State Workmen's Insurance Fund), and the agent of such "master".

While it is true, as the third circuit points out in Mays, that the Pennsylvania Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, provides in section 51 thereof, "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit", it must be remembered that the same act next provides, in section 52, *the specific* provisions for "ascertaining the intention of the Legislature", as follows:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable; . . .

"(4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language; . . ."

Another statutory consideration which strongly supports defendant's view herein is right in the substan-

tive section of the act, being section 319 of article III, as amended May 29, 1951. This is the only section in the statute which actually uses the term "third party", and it provides, in part, as follows:

"Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this Article by the employer . . ."

The compensation insurance carrier is included within the term "employer" under the provisions of article IV; it is the one "primarily liable" to pay compensation to the employe: Eldridge v. Blue Ridge Textile Co., Inc., 160 Pa. Superior Ct. 578, 585; it is a real party in interest: Kracoski v. Bernice White Ash Coal Co., Inc., 183 Pa. Superior Ct. 155; it is the "real defendant": Radel v. Seib, 105 Pa. Superior Ct. 75. The carrier must be made a party of record before any definite action in the case can be taken: Levan v. Pottstown, Phoenixville Ry. Co., 279 Pa. 381, and, indeed, the judgment is entered against the insurance carrier, since the employer "is surplusage": Stan v. Accident & Guarantee Corporation, 92 Pa. Superior Ct. 418. The view of Judge Staley, carried to the extreme to which he has pursued it in Mays, would deprive the carrier of subrogation rights under section 319, for Judge Staley would hold that the term "employer" in that section would not include the insurance carrier. This is not only contrary to established practice through the years, but it is against sensible and equitable principles, and certainly not sanctioned by the language, spirit, or reasonable construction of the legislative provisions. Indeed, Judge Staley's view, if adopted, would result in a choice between absurdities; either the insurance carrier, as Judge Staley suggests, is entitled to a credit

against its liability as a third party by virtue of the provisions of section 319 of the act, so that it is, in effect, permitted to sue itself, being subrogated against itself; or, having no rights whatsoever under section 319, because of the view of Judge Staley in limiting the meaning of the word "employer", such insurance carrier is subject to suit by way of subrogation by the employer, thereby falling prey to third-party claims against it by its own assured, despite exclusion provisions and other terms of its policy contract. The Federal courts have previously accepted uniformly the subrogation rights of the insurer, Globe Indemnity Co. v. Liberty Mut. Ins. Co., 138 F. 2d 180, 183, third circuit, citing many cases, and in Rehrer v. Service Trucking Co., 112 F. Supp. 24, 25, 26, Judge Leahy construed sections 401 and 319 of the Pennsylvania act, and stated as follows, at pages 25-6:

"The critical point, here, is an understanding of the exact nature of subrogation. Subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other. The basis of subrogation is payment. . . .

"Under Pennsylvania law the 'employer' is 'subrogated' to the original owner of the cause of action against a third party tortfeasor to the extent of the amount of compensation paid. If employer has insurance, then 'employer' means the 'insurer'. . . .

"This, because it is the compensation carrier, who pays, who is the real subrogee, and not the employer, who pays nothing."

This simply follows the old, established law of Pennsylvania. In Neal v. B. R. & P. Railway Company, 103 Pa. Superior Ct. 218, the late Judge Keller stated, at page 226, as follows:

". . . that in such event, the insurance carrier, which stands in the place of the employer, as respects its direct liability for the payment of compensation to

the injured employe or his dependents, likewise stands in his place as respects subrogation to the latter's rights against a third person responsible for the accident; and is not obliged to work out its rights solely in the name of, or in an action against, the employer, who has not personally made any of the compensation payments; but may appear in the litigation as a use-plaintiff interested in the claim against such a third person."

In Hyzy v. Pittsburgh Coal Co., supra, the Supreme Court stated:

"The courts have been consistent in holding that the remedy provided by the Workmen's Compensation Act is exclusive of all common law actions. Jackson v. Gleason, 320 Pa. 545; McIntyre v. Strausser, 365 Pa. 507." See Socha v. Metz, 385 Pa. 632, 637.

Obviously, the only thing that makes sense, as was noted in the unreported opinion of this court in Roney v. The Liberty Mutual Insurance Company, filed in July of 1962, sustaining the position urged by defendants herein, sought to be distinguished by Judge Staley, is the view of Judge Sloane in Raines v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company (affirmed by the Supreme Court, 385 Pa. 464), stated as follows:

"The purpose of the Workmen's Compensation Act is sure compensation for injury in employment: 'Its purpose was to provide recompense commmensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employers: Rudy v. McCloskey & Co., 152 Pa. Superior Ct. 101, 196 (affirmed on opinion of the Superior Court at 348 Pa. 401). Moreover, employees who have elected to come under the act by failure to disavow it at the time of employment, must pursue all actions for injuries sustained in the course of employment within the framework provided by the act, Arti-

cle III, sections 302(a) and (b) of the Workmen's Compensation Act, 77 PS Sect. 461, 462. See McIntyre v. Strausser, 365 Pa. 507, 509; Capozzoli v. Stone & Webster Eng. Co., 352 Pa. 183, 188 . . .

"It is clear that for many purposes the insurance carrier stands in the position of the employer whose Workmen's Compensation liability it assumes by furnishing him with insurance coverage, e.g., a carrier which pays or is required to pay compensation is subrogated to the rights of the employee against a third party. Globe Indemnity Co. v. Liberty Mutual Ins. Co., 138 F. 2d 180 (3 cir) . . .

"To find the insurance carrier a 'third party' is to resist the basic theme of Workmen's Compensation,—an idea that overcame fault of employer and employee and supplied the surety of the insurance carrier in its place. The insurance carrier's liability is that of the employer. To permit a split of suit in such case,—allowing recovery for the injury before the board and recovery for aggravation of the injury in the courts by way of common law remedy,—would be to nullify the entire purpose of the Act."

Other statutory provisions are equally significant in furnishing support for defendant's contentions. For example, in the statute passed on the same day with the initial Workmen's Compensation Act, establishing the State Workmen's Insurance Fund (Act of June 2, 1915, P. L. 762, sec. 21, 77 PS §362), it is specifically provided as follows:

"In every case where claim is made against the Fund, the Fund shall be entitled to every defense against such claim that would have been open to the employer, and shall be subrogated to every right of the employer arising out of such accident against the employee, the dependents, and against third persons . . ."

Since section 305 of the act under consideration makes the State Workmen's Insurance Fund the pri-

mary insurer for all payments of workmen's compensation, with the privilege of substituting only "any insurance company . . . authorized to insure such liability in this Commonwealth . . ." (Act of June 2, 1915, P. L. 736, 77 PS §501), it goes without saying that such inmmunity given specifically to the State Workmen's Insurance Fund cannot be withheld from any other insurance carrier whom the Commonwealth may permit or license to be substituted in the place and stead of the State Workmen's Insurance Fund.

Furthermore, in the same section 305 of the Workmen's Compensation Act, a further alternative to the State Workmen's Insurance Fund is provided in the privilege of self insurance, under certain supervised conditions and circumstances. If the view of plaintiff herein should be accepted, the result would be that the vast class of *employes* of self insured employers (and virtually all the major companies and large employers in this Commonwealth are self insured), would be the victims of statutory discrimination. The same discrimination would exist as to employes whose employers are employed by the State Workmen's Insurance Fund, which is one of the largest workmen's compensation insurers in the Commonwealth. If the interpretation of the Workmen's Compensation Act urged by plaintiff in this case, and in others now pending before the courts, were accepted as the law of the Commonwealth, all employes of both these large groups of employers would have, and could have, no right to sue for damages any self insured company, or the State Workmen's Insurance Fund; while employes whose employers are covered by "any insurance company . . . authorized to insure such liability by the Commonwealth . . ." (section 305, supra), could bring such suits for damages even though the same insurance carrier had already met its workmen's compensation liabilities. If plaintiff's view prevails, it is evident that

all employers not accorded the self insurance privilege, will have to insure in the State Workmen's Insurance Fund, thereby driving all other insurance companies in the Commonwealth out of the workmen's compensation business. The State Workmen's Insurance Fund would not be liable for suits such as the instant one. All other insurance companies writing workmen's compensation insurance would be liable. These companies would obviously have to increase their rates to protect themselves. The State Workmen's Insurance Fund would not. The State Workmen's Insurance Fund, therefore, could sell the same workmen's compensation insurance for substantially less than the other insurance carriers. If, perchance, they did not do so, then their profits would be greater, and since the State Workmen's Insurance Fund is a mutual company, the benefit of these extra profits would be returned to the employers and the result would be exactly the same, the employers who were insured by the State Workmen's Insurance Fund would pay substantially less for its insurance, and the other insurance companies would be unable to compete with them.

It is certainly not sensible to conclude that this was the intent of the legislature. In this connection, it may also be noted that the State Workmen's Insurance Fund may classify risks (section 10, Act of June 2, 1915, P. L. 762, 77 PS §262), and would certainly be in a position to so affect and influence rate structures, on a noncompetitive basis, to the immediate detriment of employers in this Commonwealth, with the ultimate disadvantage that results to employes when the cost of their employers' products puts such employers at a competitive disadvantage with those of other industrial states and areas.

As has heretofore been pointed out, section 152 of the Pennsylvania Statutory Construction Act is entitled, "Presumptions in Ascertaining Legislative In-

tent", and its opening statement reads, "In ascertaining the intent of the Legislature in the enactment of a law, the courts may be guided by the following presumptions . . .", and the first paragraph quoted above gives as one of the guiding presumptions that the legislature does not intend a result that is absurd or unreasonable.

In Rich Hill Coal Company v. Bashore, 334 Pa. 449, 458-61 (1939), our Supreme Court concluded as follows (pages 460-461):

"A Workmen's Compensation Law which meets the test of reasonableness in compensation as between the employee who *receives* and the employer who *pays* is one of the most socially beneficent enactments which statesmanship is capable of producing. On the other hand, a Workmen's Compensation Law which places upon any industry a burden so crushing that it makes that industry's existence either impossible or, to its owners, economically undesirable, is a measure which the workmen themselves should emphatically condemn and reject, for it paralyzes the very activities on which their economic well-being depends. Unprofitable industries soon become idle industries; idle industries mean idle capital, and in all ages and countries idle capital has always meant idle men."

No useful purpose would be served by further extending this opinion by going into detail as to the multiple and unique provisions of that part of the Insurance Code set forth in the Act of May 17, 1921, P. L. 682, art. VI, sec. 651, as amended, and further found in 40 PS §211, which covers, and covers only, workmen's compensation insurance.

While Judge Staley's view has been adopted by a Philadelphia Common Pleas Court in opinion by Judge Gold in Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Company, 37 D. & C. 2d 179, and although he dismisses all applicable previous

Pennsylvania court decisions, and describes as "misplaced" defendant's reliance upon the view and authority of the Roney case, supra, and of the Pennsylvania Supreme Court cases on which the Roney decision was based, namely, Raines v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, 385 Pa. 464, and 391 Pa. 175, aside from familiar stare decisis principles as regards Federal Court interpretation of state law, there certainly is no basis on which one may properly ignore the principal pronouncement in Raines, 385 Pa. 564, as follows, at page 467:

"The defendant company's sole liability to the appellant is under its policy of compensation insurance which it issued to the appellant's employer. The insurance company is a party to the pending compensation proceeding, and the appellant will be able therein to claim for his injuries, including the loss of his leg, once the causal connection between the original sprain and the leg amputation is established: Hornetz v. Philadelphia & Reading Coal & Iron Co., 277 Pa. 40, 41, 120 A. 662.

"The order of the court below is affirmed at the appellant's costs."

The order affirming the action of the lower court was expressing approval of Judge Sloane's language which is previously quoted hereinabove.

(2) The question may be raised that the workmen's compensation policy contract between the insurance carrier and the employer imposes obligation on the part of the insurance carrier to survey, for safety purposes, the work places, machinery and equipment of the employer, and in support of this contention it may be noted that the insurance policies are regulated and controlled by the Commonwealth, and the insurance contracts are uniform. The only provision upon which this argument could be based reads as follows:

"Inspection and Audit. The company and any rating authority having jurisdiction by law shall each be permitted to inspect the workplaces, machinery and equipment covered by this policy and to examine and audit the insured's books, vouchers, contracts, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and within three years after termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance."

We are of the opinion that this provision of "Inspection and Audit" has nothing whatsoever to do with safety regulations, but deals, and deals only, with the fixing of rates of insurance. The language of the section, "Inspection and Audit" would seem so definite that no useful purpose would be served by further pressing this issue.

The courts have frequently stated that the workmen's compensation act is a remedial act and to be construed liberally to effectuate its beneficent purposes. The best accident is the accident that never takes place. It is desirable that maximum security measures be taken by the employer or on its behalf. The many smaller employers do not have the resources to provide adequate inspection and safety programs of their own. If the construction intended by plaintiff in the instant case were to become the law of Pennsylvania, it is indeed possible that insurance companies which can escape tort liability by taking no part in any safety program and if they incur the risk of unlimited tort liability by making even some inspections, might well decide, from motives of self-interest, not to make them at all. If adequate safety programs cease, it cannot but result in some workmen losing their lives, and in many others having their earning power impaired or destroyed by accidents which could be prevented.

Article IV, sec. 51, of the Statutory Construction Act provides:

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the objects to be attained;"—and in (6) it further provides as a factor to be considered, "the consequences of a particular interpretation;. . ."

It seems to us that each of these criteria, as well as the language in section 52, heretofore quoted, that there is a presumption that the legislature does not intend a result that is absurd or unreasonable, led to the conclusion that plaintiff's position is not valid and that the preliminary objections should be sustained.

We, therefore, make the following

ORDER

And now, April 29, 1965, the preliminary objections are sustained and the complaint is dismissed.