Brown, Appellant, *v.* Travelers Insurance Company.

508

Argued November 12, 1968.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James P. McHugh,* for appellant.

*Edward W. Madeira, Jr.,* with him *Gerard J. Carpency,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. JUSTICE JONES, May 28, 1969:

On May 15, 1963, Kenneth C. Brown (appellant) was injured in the course of his employment with the Reynolds Metals Company. Reynolds' workmen's compensation insurance carrier, The Travelers Insurance Company (Travelers), accepted appellant's claim for compensation under the provisions of The Pennsylvania Workmen's Compensation Act (Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §1 et seq.) and made payments to appellant pursuant to the schedule established by the Act.

Appellant then brought an action in trespass against Travelers, alleging that Travelers' negligence in inspecting or failing to inspect Reynolds' work places and equipment caused his injuries. After appellant had filed an amended complaint, Travelers filed preliminary objections in the nature of a demurrer to the amended complaint. The Court of Common Pleas No. 4 of Philadelphia County (per SPAETH, J.) sustained Travelers' preliminary objections and dismissed the complaint. This appeal followed.

Appellant raises two issues: first, whether, as a matter of law, Travelers had a duty to see that the area where appellant worked and the manner in which the work was done were safe; second, if the answer to the first question is affirmative, whether an employer's insurance carrier is subject to suit under The Pennsylvania Workmen's Compensation Act. We need not consider the first issue, for we hold that an employer's insurance carrier enjoys the same immunity from liability under the Act as does the employer.

Travelers' position is that, under §303 of the Act (77 P.S. §481), the insurance carrier is entitled to the

same freedom from common law liability as is the employer. Section 303 provides: "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages. . . . Such agreement shall bind the *employer* and his personal representatives, and the employe . . . ." (Emphasis added) Travelers claims that the insurance carrier is included within the term "employer," relying on the definition of "employer" found in §401 of the Act (77 P.S. §701): "The term 'Employer,' when used in this article, shall mean the employer as defined in article one of this act . . . or his insurer if such insurer has assumed the employer's liability . . . ."

Appellant counters by arguing that this definition applies only to Article IV of the Act, that the employer's immunity from liability is established in Article III and that, therefore, the general definition of "employer" set forth in Article I is controlling. Section 103 defines "employer" as "synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." (77 P.S. §21). No reference is made to the employer's insurance carrier.

The courts in this Commonwealth which have considered this question have disagreed as to which definition should apply. The leading case in support of the appellant's position is *Mays v. Liberty Mut. Ins. Co.*, 323 F. 2d 174 (3d Cir. 1963), in which the court (per STALEY, J.) held that the Article I definition was to be applied to the immunity section in Article III. We are not persuaded by this opinion. The *Mays* opinion was carefully analyzed and criticized in an ex-

haustive and able opinion written by Judges BARBIERI and ULLMAN—both of whom had extensive experience in workmen's compensation prior to their elevation to the bench. *Brown v. Travelers Ins. Cos.*, 37 Pa. D. & C. 2d 111 (Phila. C. P. 1965). Since we feel that Judges BARBIERI and ULLMAN more than adequately set forth the reasons why the more restricted definition of "employer" should not apply to the immunity section, we quote at length from their opinion: "As is observed, Judge STALEY'S conclusion is arrived at by his view that the language of section 103 is to be given superior force to that of section 401, for he refers to the former as the 'principal definition'. One may ask, why so? We have noted previously herein that article I (including section 103) and article IV (including section 401), are neither of them substantive. We have termed them 'external' articles, as compared with the legislatively designated substantive articles II and III. In short, the first and fourth articles are ancillary, descriptive, unsubstantive and are both basically procedural in significance. It would have been inappropriate for the legislature to have included the workmen's compensation insurance carrier as synonymous with employer in section 103 of article I of the act, because that section was delineating the status of employer and employe for the limited purposes of their status as parties to the statutory agreement to accept the compensation system which was set up in article III . . . . Chronologically speaking, it would be pointless and fruitless to discuss the insurance carrier in article I of the act, because the need for insuring could not arise until article III had become operative. It is the 'master' alone (who, before he accepts the act, has no need for a compensation insurance carrier), who is concerned with the substantive provisions of articles II and III. The employer not only has the

right to reject the act, but frequently has done so. See Rich Hill Coal Company v. Bashore, 334 Pa. 449 (1939). Article IV sets up all of the provisions for every form of process and remedy available to a claimant and the manner in which liability of the employer to him is to be met, satisfied, settled, concluded and released; so that even under Judge STALEY'S conception of article IV, and section 401, the insurance carrier shares every one of the obligations, prerequisites, benefits and release rights of the employer. Thus, we find the legislature stating in section 401 that the employer, who had to be defined in section 103 solely as the 'master' for articles II and III purposes, would, for all remedial or procedural purposes, be taken to be a complex entity, including within its scope the compensation insurer (be it a private company or the State Workmen's Insurance Fund), and the agent of such 'master'." (37 Pa. D. & C. 2d at 119, 120)

If we were to accept the appellant's argument that the Article I definition applies to Article III, then we would have difficulty interpreting §319, which states, "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the *employer* shall be subrogated to the right of the employe . . . ." (Emphasis added) (77 P.S. §671). The appellant could hardly argue that if the employer has an insurance carrier, that carrier has no subrogation rights because the word "employer" as used in the subrogation section does not include the insurance carrier. Travelers argues quite convincingly that the legislature clearly intended the word "employer" as used in §319 to include the insurance carrier. Therefore, since §319 is part of Article III, this destroys the appellant's argument that the Article I definition of "employer" applies throughout Article III. Instead, we are convinced that the legislature intended that the

broader definition which clearly applies in §319 should also apply in §303 establishing the employer's immunity.

While we conclude that Judges BARBIERI and ULLMAN correctly interpreted the Act, we must admit in all candor that the question is not free from doubt on the face of the statute. However, the relevant policy considerations reinforce our conclusion that the legislature intended that the insurance carrier would share in the employer's immunity.

First, if the appellant's position were adopted, then a regrettable discrimination would result between employers who are insured by the State Workmen's Insurance Fund or are self-insuring employers and those employers who carry private insurance. The statute setting up the State Workmen's Insurance Fund specifically gives the Fund the same defenses which are available to the employer,[1] and, therefore, it is impossible to bring a suit such as the instant action against the Fund or a self-insuring employer. Such discrimination would be inequitable and unjust both to the employers who utilize private insurance and to their employees: first, these employers would be placed at a competitive disadvantage since private insurance carriers would necessarily have to raise their rates to offset the increased liability placed upon them by the result urged by the appellant; second, the employees would be disadvantaged because, in the wake of such a result, private insurance carriers would probably abandon all safety programs since these programs, instead of cutting costs by reducing accidents, would merely increase the orbit of the carrier's liability. We cannot and do not believe that the legislature ever intended the Workmen's Compensation Act to produce such discrimination.

---

[1] Act of June 2, 1915, P. L. 762, §21, 77 P.S. §362.

Second, we do not think that the legislature intended to place insurance carriers in such a position that they would be forced to abandon these safety programs. Today many insurance carriers undertake such safety programs in the factories and business places of employers whom they insure. Admittedly, these programs are not motivated by an altruistic feeling toward workers, since it is to the financial advantage of the insurance carrier to reduce accidents and safety programs reduce accidents. Nevertheless, although the insurance carriers are attempting to save money, the safety programs they institute directly benefit the workers. Under the appellant's position, if an insurance carrier is negligent in instituting a safety program, it is liable to an employee who is injured as a result. Since the insurance carrier is not required by law to carry on these safety programs, the end result of the appellant's argument seems assured—insurance carriers will specifically absolve themselves from undertaking such safety programs. Again, we cannot conclude that the legislature intended this result.

Third, the weight of authority from other jurisdictions supports Travelers' position. This question has been much litigated across the country. In 1960 the Supreme Court of New Hampshire held that a negligent insurance carrier was subject to suit by the injured employee.[2] Three years later the Supreme Court of Iowa followed suit.[3] However, the legislatures in both these states quickly amended their workmen's compensation statutes to reverse the results reached in these cases.[4] Courts in at least fifteen other states

[2] *Smith v. American Employers' Ins. Co.*, 102 N.H. 530, 163 A. 2d 564 (1960).

[3] *Fabricius v. Montgomery Elevator Co.*, 254 Iowa 1319, 121 N.W. 2d 361 (1963).

[4] 2-B N. H. Rev. Stat. Ann., §281:12; 6 Iowa Code Ann., §88A.14.

have considered this question and twelve of these courts rejected the position advocated by the appellant.[5] Furthermore, at least seven states—including Pennsylvania—have amended their workmen's compensation acts specifically to bar recovery by the employee against the insurance carrier.[6]  These statistics indicate that

[5] Those courts reaching a result contrary to the appellant's position include: *Horne v. Security Mut. Cas. Co.*, 265 F. Supp. 379 (E.D. Ark. 1967) ; *State Compensation Ins. Fund v. Superior Court*, 237 Cal. App. 2d 416, 46 Cal. Rptr. 891 (Dist. Ct. App. 1965) ; *Bartolotta v. United States*, 276 F. Supp. 66 (D. Conn. 1967) ; *Gerace v. Liberty Mut. Ins. Co.*, 264 F. Supp. 95 (D.C.D.C. 1966) ; *Donohue v. Maryland Cas. Co.*, 363 F. 2d 442 (4th Cir. [Maryland] 1966) ; *Matthews v. Liberty Mut. Ins. Co.*, 354 Mass. 470, 238 N.E. 2d 348 (1968) ; *West v. Atlas Chemical Industries, Inc.*, 264 F. Supp. 697 (E.D. Mo. 1966) ; *Mustapha v. Liberty Mut. Ins. Co.*, 387 F. 2d 631 (1st Cir. [Rhode Island] 1967) ; *Williams v. United States Fid. & Guar. Co.*, 358 F. 2d 799 (4th Cir. [Virginia] 1966) ; *Schulz v. Standard Accident Ins. Co.*, 125 F. Supp. 411 (E.D. Wash. [interpreting Idaho statute] 1954) ; *Kerner v. Employers' Mut. Liab. Ins. Co.*, 35 Wis. 2d 391, 151 N.W. 2d 72 (1967). The three courts which have reached the result advocated by the appellant include: *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E. 2d 769 (1964) (4-3 opinion interpreting a Florida statute. A federal district court in Florida refused to follow the Illinois Supreme Court's opinion in *Hill v. United States Fid. & Guar. Co.*, 272 F. Supp. 569 (M.D. Fla. 1967)) ; *Ray v. Transamerican Ins. Co.*, 10 Mich. App. 55, 158 N.W. 2d 786 (1968) (the Michigan federal courts reached a contrary result in *Kotarski v. Aetna Cas. & Surety Co.*, 244 F. Supp. 547 (E.D. Mich. 1965), aff'd, 372 F. 2d 95 (6th Cir. 1967)) ; *Mager v. United Hospitals*, 88 N. J. Super. 421, 212 A. 2d 664 (App. Div. 1965), aff'd per curiam, 46 N.J. 398, 217 A. 2d 325 (1966) (this case can be distinguished on its facts, however, for the employee was injured as a result of improper medical attention in a hospital run by the employer's insurance carrier).

[6] 8 Ind. Stat. Ann., §40-1205; 3A Neb. Rev. Stat., §48-111; 9 N.M. Stat. Ann., §59-10-4F.; 5 Ore. Rev. Stat., §656.018(3) ; 22 Tex. Civ. Stat. Ann., art. 8306, §3; 16 Wis. Stat. Ann., §102.03(2). The Pennsylvania statute—Act of January 25, 1966, P. L. (1965) 1552, §1, 77 P.S. §501 (pp)—was not in effect when this cause of action arose.

the position advanced by the appellant has generally met with disfavor and represents a minority view. The legislatures of at least nine states have come to the conclusion that permitting an employee to bring an action against the insurance carrier produces serious consequences for the entire structure of workmen's compensation.

In conclusion, we hold that the insurance carrier is included within the term "employer" as that word is used in §303 and, therefore, shares the employer's immunity from common law liability.

Order affirmed.

Mr. Justice COHEN concurs in the result.

———

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I cannot agree with the majority's interpretation of The Pennsylvania Workmen's Compensation Act.[1] The majority holds that the carrier is entitled to the same freedom from common law liability as the employer, as provided in §303 of the Act, 77 P.S. §481. Section 303 provides: "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the *employer* and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents." (Emphasis added). The majority relies on §401 of the Act, 77 P.S. §701, which provides: "The term 'Employer,' when used in this article, shall mean the em-

---

[1] Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §§1-1025.

ployer as defined in article one of this act [§103 of the Act], or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability, or the fund if the employer be insured therein." The majority, recognizing the split of authority in Pennsylvania, relies on the decision of the Philadelphia Court of Common Pleas in *Brown v. Travelers*, 37 Pa. D. & C. 2d 111 (Phila C.P. 1965), which held that §401 did indeed exempt the carrier from common law liability. I am not persuaded by that case, but rather am impressed by the reasoning of Judge (later Chief Judge) STALEY in *Mays v. Liberty Mutual*, 323 F. 2d 174 (3d Cir. 1963), which reasoning was also adopted by Judge GOLD in *Adcox v. Pa. Mfrs'. Assn. Cas. Ins. Co.*, 37 Pa. D. & C. 2d 179 (Phila. C.P. 1964). I am also impressed by the reasoning of the decisions in several other jurisdictions which have permitted recovery.[2] However, I recognize that those cases, as well as those which have denied recovery, are based on the particular workmen's compensation statutes applicable in the several jurisdictions and are thus of somewhat limited value to this Court. I am thus unimpressed by the "counting of jurisdictions" argument made by the majority. That argument is never a particularly powerful one and is even less so in this case where a particular state's statute must be construed.

Our task is to interpret the Pennsylvania statute, and I, for one, agree with Judge STALEY that the clear words of the statute are susceptible of only one interpretation. I take the liberty to quote extensively from his opinion in *Mays*, supra, at page 176: "The appellate courts of Pennsylvania have not passed upon the question. The problem, though novel, is wholly one of statutory construction. More particularly, as we have

---

[2] The cases are set forth in the majority opinion, at footnotes 2, 3, and 5.

previously stated, it is refined to the question of whether the insurance carrier is an 'employer' as that term is defined in the statute. Accordingly, we start with that definition: '§21. "Employer" defined. The term "employer" as used in this act, *is declared to be synonymous with master,* and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it.' 77 Purdon's Pa. Stat. Ann. §21. It is not contended that Liberty is in any sense the master of Mays, and, thus, as the district court observed, 'The specific language of this section would apparently exclude from the definition of "employer" anything not therein included.' However, the court was impressed with the expanded definition of the term found in Article IV, §401 of the Act, and with the subrogation rights of insurance carriers. The relevant portion of §401 provides: 'The term "Employer," *when used in this article,* shall mean the employer as defined in article one of this act, or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability, or the fund if the employer be insured therein.' 77 Purdon's Pa. Stat. Ann. §701. The district court reasoned that, '[u]nder the Act, the carrier cannot assume any portion of the employer's recognized duty without assuming the corresponding liability. Having assumed a portion of the employer's liability, the carrier stands in the shoes of the employer under the Pennsylvania Act.' 211 F. Supp. at 544.

"But the legislature has defined the term 'employer' in words which are clear and free from all ambiguity. The mandate of the Pennsylvania Statutory Construction Act requires adherence to that definition. Nor is this legislative command made inapplicable by the definition contained in Article IV, §401 of the Workmen's

Compensation Act. Article IV relates solely to procedure, and §401 specifically states that the definition therein contained applies only 'when used in this article.' Since the Act contemplates a system of compensation insurance, it is perfectly reasonable that the employer's insurance carrier, which pays the injured employee, be given the same procedural rights as the insured employer. Of course, the reference in §401 to an insurer who 'has assumed the employer's liability' means the liability to pay compensation to the injured employee, for under the Act that is the extent of the employer's liability. From this it is clear that, rather than expanding the principal definition of 'employer', §401 serves only this limited purpose. In this respect the definition in that section supports the position of Mays, for when the legislature intended to equate the insurer with the employer, it did so specifically in unequivocal terms. Its failure to do so in the clear, unambiguous definition found in §103, 77 Purdon's Pa. Stat. Ann. §21, is an indication that it did not intend to blend their jural personalities.

"It is beyond dispute that the Act affects only the legal relations between employer and employee and does not purport to alter the employee's rights against third parties. On the contrary, the statute acknowledges the viability of those rights. 77 Purdon's Pa. Stat. Ann. §671. Thus, insofar as the employment relationship is concerned, the statute must be liberally construed in order to effectuate its remedial purpose, but its scope cannot be extended in a manner which would destroy either the employee's common-law rights against third persons, or the common-law conception of third persons. Zimmer v. Casey, 296 Pa. 529, 146 A. 130 (1929). The essence, indeed the very legislative definition, of the employer-employee status is the master-servant relationship. As the Pennsylvania Su-

preme Court held in *Zimmer*, 146 A. at 131, 'The act does not affect the existing common-law right to sue the wrongdoer, unless that wrongdoer is the master.' The master-servant relationship is totally lacking in the matter sub judice. Hence, to hold that Liberty is the employer of Mays within the meaning of the Act would not only be to abrogate by judicial legislation the employee's common-law rights, but would directly contravene the intent of the legislature as manifested in the statute.

"We conclude therefore that this suit is not barred by the Pennsylvania Workmen's Compensation Act." [footnotes omitted]. (Emphasis in original).

The majority recites several reasons why we should not follow *Mays*. First, it states that the definition of employer in Article I, §103 should not control, because Article I, like Article IV, is ancillary to Articles II and III. This was the reasoning adopted by the court in *Brown v. Travelers*, 37 Pa. D. & C. 2d, supra. That argument is simply not tenable. Article I is the definitional article, setting forth definitions to govern the entire Act. The expanded definition of employer in Article IV is specifically limited to that Article. Thus the definition in Article I is still valid for the rest of the Act.

The majority next argues that certain unreasonable results would follow from a decision in favor of appellant here. One of these would allegedly be to deprive the carrier of subrogation rights under §319 of the Act, 77 P.S. §671. That section provides, in relevant part: "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee . . . against such third party to the extent of the compensation payable under this article [footnote omitted] by the employer . . ." Travelers contends that

since several cases have indicated that where the carrier pays, the carrier is subrogated to the employee's claim,[3] "employer" in §319 is necessarily interpreted to include the carrier. Since, says Travelers, it would be unreasonable to hold that "employer" includes the carrier in §319 but not in §303, §303 should be interpreted to give immunity from common law liability to the carrier as well as the employer. The majority has accepted this argument. Travelers' argument founders, however, on the assumption that the subrogation right of the carrier is based on §319. The only appellate state court case cited, *Neal v. B. R. & P. Rwy. Co.*, 103 Pa. Superior Ct. 218, 158 Atl. 305 (1931), expressly predicates subrogation on the carrier-employer contract. It would appear that even without any specific provision for subrogation, the general equitable principle that one who pays the debt of another is entitled to the creditor's claim against the debtor would apply to allow the carrier the right of subrogation. There is thus nothing inconsistent in allowing the carrier a right of subrogation based on general equitable principles, completely outside §319, and at the same time holding that the clear meaning of the word "employer" in §303 excludes the carrier.

Nor am I convinced by the argument that the allowance of a common law action against a private carrier results in certain invidious discriminations. The majority asserts that such discriminations would exist because the private carrier could be sued, whereas the State Workmen's Insurance Fund could not. Furthermore, employees of employers utilizing private insurance would be disadvantaged because private insurance

---

[3] *Globe Indemnity Co. v. Liberty Mut. Ins. Co.*, 138 F. 2d 180 (3d Cir. 1943); *Rehrer v. Service Trucking Co.*, 112 F. Supp. 24 (D.C. Del. 1953), construing Pennsylvania Law; *Neal v. B. R. & P. Rwy. Co.*, 103 Pa. Superior Ct. 218, 158 Atl. 305 (1931).

carriers would abandon all safety programs. This argument breaks down in several respects. Assuming that the State Fund is immune from common law liability, numerous reasons for distinguishing the State Fund from private carriers present themselves. For refutation of the contention that the employees would be disadvantaged[4] I again quote from Judge STALEY'S opinion in *Mays*, supra: "The insurer's final argument is based on what it terms 'pressing considerations of public policy.' It is urged that our determination will cause insurance companies to refrain from making safety inspections, and that the 'ultimate losers will be workmen and their families' because of an increase in the incidence and severity of industrial accidents. There can be no doubt of the value of a safety program. This, however, is not to say that insurance carriers are motivated solely by altruism or derive no financial benefit from a safety inspection policy. It is obvious that the cost of workmen's compensation becomes less and less expensive as more and better safety methods are devised and put into operation. We point this out not to suggest that the insurer has a duty to inspect, but simply to show that a policy of inspection has practical advantages for the insurer, as well as for the employer and his workmen. . . ." Clearly, none of the alleged unreasonable results that would follow from appellant's construction is sufficient to overcome the clear meaning of the words of the statute.

Finally, the majority alludes to the enactment of the 1966 amendment to §305 of the Workmen's Compensation Act. That amendment, Act of January 25,

---

[4] I might point out that the carrier argued that employees of employers who did *not* utilize private insurers (i.e., who self-insured or insured with the State Fund) would be discriminated against. While I cannot accept this contention either, it is apparent that the carrier is arguing out of both sides of its mouth.

1966, P. L. (1965) 1552, §1, 77 P.S. §501, provides that the insurer "shall be entitled to all of the employer's immunities and protection hereunder except, [exceptions not relevant]." The majority does not hold, as indeed it could not, *Doane v. Travelers Ins. Co.*, 266 F. Supp. 504 (E.D. Pa. 1966), that the 1966 amendment applies retroactively to deprive the injured plaintiff of his common law action. Rather, it intimates that the 1966 amendment clarified the prior law that had existed since the enactment of the Act itself. It should be clear by this time that in all cases such as this, one side urges that the amendment changed the law, and the other that it merely clarified the law. I am inclined to agree with the Supreme Court of Iowa, which, when faced with the identical problem of deciding what bearing an amendment had on the previous meaning of the statute, stated that little if any weight should be given to the passage of the amendment since the amendment would not necessarily indicate either an intent to change the meaning of the existing law or legislative recognition that the statute prior to the amendment already permitted the operations that were in doubt. *State v. All-Iowa Agricultural Assn.*, 242 Iowa 860, 48 N.W. 2d 281 (1951).

However, inasmuch as the language of §303 before the amendment to §305 was clear and free from ambiguity, this Court should not even have to consider the effect to be given the 1966 amendment to §305 as an aid to the construction of §303 as it originally stood. Statutory Construction Act, supra, §51, 46 P.S. §551. I would thus hold that appellant's cause of action is not barred by the Workmen's Compensation Act.

Nor do I believe that appellant has for any other reason failed to state a cause of action. The question of the duty owed by the employer's workmen's compensation carrier to an employee has been considered on

several occasions by the Pennsylvania courts. The starting point must necessarily be the decision of this Court in *DeJesus v. Liberty Mutual Ins. Co.*, 423 Pa. 198, 223 A. 2d 849 (1966). In that case, the plaintiff sued his employer's workmen's compensation carrier for injuries he sustained from a strip of baling wire which he had cut in the process of opening a bale of compressed wool. Plaintiff alleged a duty on the part of the insurer, arising out of its advertising material representing that it provided loss prevention services and safety counsel to its policyholders. We held that the allegations were insufficient to create a duty in the carrier toward the employee because there was no averment that the advertisements were part of any contract or other legal obligation undertaken by the carrier, or that the advertisements adversely affected appellant. We went on to indicate that even if DeJesus had alleged an undertaking to render services in developing safety techniques, he still would not have stated a cause of action. The Court cited with approval §323 of the Restatement 2d, Torts, which states: "§323. Negligent Performance of Undertaking to Render Services. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Since DeJesus failed to allege an increased risk of harm or reliance upon the carrier's undertaking, he was precluded from recovering on that basis also.

Appellant's attorney in the instant case evidently did his homework, for the pleading deficiencies which

precluded recovery in *DeJesus* have been avoided here. Paragraphs 6, 7 and 8 of the amended complaint clearly set forth appellant's theory that appellee had assumed a duty by undertaking to render services in making the employer's premises safe, and that its negligent inspections or failure to inspect had increased the risk of harm to appellant who had relied on appellee's program.[5] The amended complaint, in addi-

---

[5] Paragraphs 6, 7 and 8 of the amended complaint allege:

"6. At or about the said time and place and on different dates prior thereto, the defendant, The Travelers Insurance Company, saw fit, as part of its Workmen's Compensation contract with the Reynolds Metal Company, to have its inspectors, investigators and other safety engineers inspect the various machines and other implements of production at the Reynolds Metal Company in order to evaluate the safety factor of same and also to give advice concerning the safety devices which might be used to decrease the amount of risk involved under the Workmen's Compensation policy.

"Defendant issued a policy of Workmen's Compensation insurance to plaintiff's employer and undertook by affirmative actions on the part of its agents, servants, employees and representatives to inspect the work places, machinery and equipment used by the plaintiff and his employer and to apprise counsel and recommend to the said employer and its employees as to the existence of all unsafe, hazardous, dangerous and negligent conditions of said work places, machinery and equipment used by the said employer and its employees.

"The defendant, in advertising brochures, pamphlets and statements both oral and otherwise, had advised, informed and otherwise indicated to the employer, the Reynolds Metals Company and its employees, that it had undertaken, agreed and otherwise set forth that it would promulgate, institute and establish a proper safety program with proper safety procedures and methods, including warnings on the premises of the plaintiff's employer in and about the work places used by various employees of the Reynolds Metals Company, and that it would make any and all necessary inspections of the premises, or places, machinery and equipment used by the said employer, the Reynolds Metals Company, and its employees in order to properly institute, establish and install a workable safety program and recommend and install proper protective devices and periodic inspection programs in order to

tion to setting forth a theory of appellee's undertaking a duty, can also be read to support a theory that ap-

make safe the work places, machines and equipment on the premises of the Reynolds Metals Company in order to minimize, reduce and eliminate accidents upon the premises.

"To implement and supplement the program initiated by the defendant on the premises of the Reynolds Metals Company, defendant used technically trained safety experts and conducted a safety engineering department for this purpose and for compliance with the duty it had undertaken with respect to the Reynolds Metals Company, its Workmen's Compensation policy holder, and to its employees concerning safety. Surveys and inspections were made prior to the date of the accident in the instant case at or about the machinery on which plaintiff was injured and, although the duty and obligation of the defendant to plaintiff was clearly defined by its program, safety devices on and about the machine on which plaintiff was injured, were not, through the negligence of the defendant, recommended, although it was patently clear and obvious that the exposed moving gears, parts and, more particularly, those on which plaintiff was injured, constituted a danger to the employee operating the machine in question. It was also clear that the safety buttons on the existing machine in question were inadequate, ill-placed and ineffective. Defendant again breached its duty to the employee in negligently failing to recommend changes regarding the same.

"Defendants thereby failed negligently to adhere to and to comply with the standards and the obligation and duty which it had undertaken with respect to the plaintiff employee.

"7. That, because of this program instituted by defendant, the said defendant foresaw the various dangers to the plaintiff and in endeavoring to eliminate said dangers and other dangers, defendant thereby assumed a legal duty to the plaintiff in the development of the safety techniques, devices, etc. as used in its program. Having undertaken this program, defendant recognized it as necessary to the protection of plaintiff's person and things.

"8. Recognizing the aforementioned, defendant failed to exercise reasonable care and judgment in addition to the allegations of negligence listed below in correcting the obvious dangerous conditions or in ordering and directing them to be corrected, and in not warning the plaintiff who, because of the safety program, advertisements, etc., relied upon the defendant and its program for his safety.

pellee was required to fulfill such a duty by virtue of its contract with the employer. Whether appellant can adduce evidence at trial to support either of these theories is conjectural, but I cannot say as a matter of law that he should not be given an opportunity to prove a duty based on either theory, both of which the law of Pennsylvania has long recognized.

Appellee urges that the cases of *Raines v. Pa. Thresh. & F. Mut. Cas. Ins. Co.*, 385 Pa. 464, 123 A. 2d 420 (1956), and 391 Pa. 175, 137 A. 2d 257 (1958), preclude any finding of a duty in the instant case. The plaintiff in *Raines* had received a leg injury at work. Plaintiff sued his employer's workmen's compensation insurance carrier on the ground that the loss of the leg and the aggravation of other injuries were caused by the failure of the insurance carrier to furnish him with competent and adequate medical care allegedly promised to him by the carrier's representative. This Court, twice affirming the court below, first on the trespass claim and then on the assumpsit action, held that there could be no recovery. However, the *Raines* cases are distinguishable from the instant case, and rather than preclude appellant's recovery, actually support it. Those cases are based not on the impossibility of a duty arising from an undertaking to perform it, but from the failure of the plaintiff to "plead a single fact from which could be derived a finding of negligence on the part of the insurance company that was the proximate cause of the aggravation of the appellant's injury." 385 Pa. at 467. *Raines* is based merely on a failure sufficiently to allege the undertaking.

---

"Having undertaken the said program, and having not warned plaintiff or otherwise corrected the conditions which were obviously dangerous for the protection of the plaintiff, the defendant thereby *increased the risk of harm to the plaintiff who, knowing of the program had relied on defendant's expertise, inspections and recommendations, etc. for his safety.*" (Emphasis ours)

In addition to the *DeJesus* case, supra, other Pennsylvania authority clearly supports the principle stated by the Restatement and by Justice CARDOZO in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276 (1922): "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." In *Mays v. Liberty Mutual Insurance Company*, 211 F. Supp. 541 (E.D. Pa. 1962), *reversed on other grounds,* 323 F. 2d 174, the District Court denied recovery to the employee on the ground that the carrier was not liable outside the Workmen's Compensation Act, the first issue involved in the instant case. However, the Court did not reach the issue of the action being barred by the Workmen's Compensation Act until after it considered whether the carrier owed any duty to the plaintiff upon which liability could be predicated even if the action were not barred by the effect of the Workmen's Compensation Act. The plaintiff's complaint was somewhat inartfully drawn, choosing to rely on an alleged duty to inspect imposed by the contract between the employer and the carrier. The District Court found from the contract only a license to inspect, not a duty. However, from some of the carrier's answers to interrogatories that were before the court on the motion for summary judgment, it appeared that the carrier had undertaken to make some inspections even though it was not required to do so. The court stated at page 542: "[T]he voluntary undertaking of such a program by Liberty possibly may have created a duty. However, as the facts are not yet sufficiently developed, an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits. At this point it cannot be said that as a matter of law Liberty had no duty to Mays." On appeal, the Court of Appeals likewise refused to accept

the carrier's argument that, as a matter of law, it owed no enforceable duty to the employee. Similarly, in *Adcox v. Pa. Mfrs.' Assn. Cas. Ins. Co.*, supra, Judge GOLD, in a well written opinion, held that the complaint set forth a cause of action "by alleging an enforceable duty to plaintiff arising out of defendant's voluntary assumption of responsibility to make safety inspections in the employer's establishment." The instant case is virtually the same as *Mays* and *Adcox*; it is impossible to determine on these preliminary objections that Travelers owed no enforceable duty to Brown. On preliminary objections in the nature of a demurrer, all well pleaded facts in the complaint and every inference fairly deducible therefrom must be taken as true. *Kutsenkow v. Kutsenkow*, 414 Pa. 610, 202 A. 2d 68 (1964). Appellant has pleaded sufficient facts which, if true, would indicate that Travelers assumed a duty to him; he has stated a cause of action.

In addition, appellant has alleged that, by virtue of its contract with the employer, Reynolds, Travelers owed the employee, Brown, a duty. The leading case in this area is *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A. 2d 573 (1961). In that case, the plaintiff, Evans, a stock clerk, was injured through the malfunction of his employer's freight elevator. Plaintiff sued the defendant, Otis Elevator Company, relying on the employer's "Otis Service" contract with the defendant, under which Otis agreed to make a semi-monthly examination of the elevator and to lubricate it and make necessary adjustments. This Court in affirming a judgment on a verdict for the plaintiff, stated at page 18: "Otis argues that this agreement imposed upon it no duty or obligation to Evans and that Evans, not a party to this agreement, has no standing to complain of an injury allegedly sustained by reason of the manner in which Otis performed this agreement. Gener-

ally a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (2d ed. 1955), §85, pp. 514-519. It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees: Bollin v. Elevator Construction & Repair Co., 361 Pa. 7, 17, 18, 63 A. 2d 19 and cases therein cited. The orbit of Otis' duty to third persons is measured by the nature and scope of his contractual undertaking with Sperling and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection. Such principle finds support in reason, justice and precedent: [citing cases]."

This theory of recovery was rejected by the courts in *Mays*, supra, and *Adcox*, supra, on the ground that the contracts involved there merely gave the carrier the license to inspect, and did not impose a duty upon the carrier. Appellant here alleged that the instant

contract does impose a duty. At this stage, it cannot be determined that the instant case does not fall within the *Evans v. Otis Elevator Co.* line of cases, and for that additional reason, a cause of action has been stated.

I would thus reverse the order sustaining the preliminary objections in the nature of a demurrer, and would permit the plaintiff to go to trial.

Mr. Justice ROBERTS joins in this dissent.