## ANCHOR HOCKING PACKAGING COMPANY, and Zurich–American Insurance Group, Petitioners,

v.

## WORKERS' COMPENSATION APPEAL BOARD (MARTIN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 25, 1999.

Decided July 23, 1999.

Raymond F. Keisling, Carnegie, for petitioners.

Pamela M. Schiller and Barbara E. Holmes, Pittsburgh, for respondent.

Before DOYLE, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

Anchor Hocking Packaging Company (Employer) petitions for review of an or-

---

der of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) finding it the responsible employer and awarding hearing loss benefits to Gary L. Martin (Claimant), but adjusting the percentage of Claimant's binaural hearing loss to 52.66% from 25.94% as found by the WCJ.

Claimant filed a claim petition on December 23, 1994, alleging that he suffered binaural hearing loss as a result of long-term exposure to hazardous occupational noise while in course of his employment. The claim petition named Anchor Hocking as the employer with an address at 1840 Baldridge Street in Connellsville, Pennsylvania. On February 15, 1995, Anchor Hocking (not Employer, Anchor Hocking Packaging Company) filed an answer denying all material allegations and listing, as its insurance carrier, Travelers Insurance Company (Travelers). It also asserted as a defense that Travelers did not provide insurance coverage to Anchor Hocking on October 25, 1994, the date of injury listed on the claim petition, because its coverage had terminated on December 31, 1991. On the same day, Travelers petitioned to join Zurich–American Insurance Company (Zurich) alleging that on the date of injury listed on the claim petition, Claimant was employed by Employer whose insurance carrier was Zurich.

On February 17, 1995, Employer filed an answer denying all material allegations and listing its address as 1840 Baldridge Street in Connellsville, Pennsylvania, and Zurich as its insurance carrier. It also specifically denied that Claimant suffered a loss of hearing related to his employment with Employer. Also on February 17, Zurich filed an answer to the joinder petition admitting that it was the insurance carrier for Employer in 1994, but denying that Claimant suffered a loss of hearing during its period of coverage.

Before the WCJ, Claimant testified that he began working for Employer in 1953 and worked at the same plant in Connellsville until his retirement on January 1, 1997. For the first three years he worked as a laborer in which he was exposed to loud noise coming from machines that were stamping out caps. The next four years he spent as an apprentice in the machine shop until he became a tool and die maker and performed in that capacity for over 35 years. As a tool and die maker, he was exposed to the sounds of running mill machines, grinders, drill presses and lathe machines, all of which emitted loud noises. He stated that he did not wear ear protection unless he went into the main plant where hearing protection was made mandatory in 1980. Claimant also testified that he now wore hearing aids in both ears because of his deteriorating hearing.

In support of his position, Claimant introduced the testimony of Stephen Froman, M.D. (Dr. Froman), a board-certified otolaryngologist. Dr. Froman obtained a general history as well as a history of Claimant's occupational noise exposure. Dr. Froman administered an audiogram to Claimant and concluded that Claimant suffered a binaural hearing loss of 25.94% according to the American Medical Association's Guide to the Evaluation of Permanent Impairment (AMA Guides), the standard required by Act 1 of 1995, Act of February 22, 1995, P.L. 1, the hearing loss amendments to Section 306(c)(8)(i) of the Workers' Compensation Act (Act),[1] when measuring the percentage of a claimant's hearing loss. Dr. Froman also opined that the above amount of hearing loss was caused by his cumulative exposure to loud noises during the time he worked for Employer.

Employer introduced the testimony of Sidney Busis, M.D. (Dr. Busis), who is also a board-certified otolaryngologist. Dr. Busis was of the opinion that Claimant had significant hearing loss due to factors such as heredity, and that exposure to occupa-

---

1. Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. § 513(8)(i).

tional noise was not a contributing factor to Claimant's loss of hearing. He admitted, however, that he could not rule out hearing loss caused by exposure to hazardous occupational noise during the first ten to 15 years of Claimant's employment.

The WCJ found Dr. Froman more credible than Dr. Busis, and awarded Claimant hearing loss benefits for a 25.94% binaural hearing loss as a result of long-term exposure to hazardous occupational noise while in the course of his employment. The WCJ found that Employer and its insurer, Zurich, were responsible for paying Claimant's benefits and dismissed Anchor Hocking and its insurance carrier, Travelers, from the case. Employer appealed to the Board contending that Claimant only worked for it for the last two years and failed to establish what portion of his hearing loss was attributable to those two years. It also argued that he failed to give it timely notice of his claim petition. Furthermore, it argued that if Claimant was entitled to any benefits for hearing loss, that Anchor Hocking and Travelers should be the responsible parties. The Board, however, affirmed the order of the WCJ in all respects, except that it found that the WCJ made an error in calculating Claimant's percentage of hearing impairment which it believed should have been 52.66% rather than 25.94%. It thus amended the WCJ's order to reflect the purported adjusted amount. This present appeal by Employer followed.[2]

Initially, Employer contends that the Board erred in changing the Claimant's percentage of hearing impairment to 52.66% because that amount was not supported by the record. Because Claimant agrees that the Board erred by revising upward the percentage of his hearing impairment, and that the proper percentage of hearing impairment as testified to by Dr. Froman was 25.94%,[3] the order of the Board in this respect is vacated and the 25.94% percentage of hearing impairment found by the WCJ based on Dr. Froman's testimony is reinstated.

As to whether it is responsible for any hearing loss, Employer also contends that because Dr. Froman could not specify exactly the amount of hearing loss that Claimant suffered from 1992 to 1994, Claimant could not collect any benefits from it because Claimant only worked for Employer for those two years. In essence, Employer is alleging that Anchor Hocking became Anchor Hocking Packaging Company creating a new employer for which Claimant is only allowed to recover for the amount he can establish was specifically caused by the Employer. Notwithstanding that the record is completely devoid of any evidence of change in corporate ownership, except for the assertion in Employer's brief that Anchor Hocking was the former owner of the plant and that Employer, Anchor Hocking Packaging Company is a separate corporate entity which only employed Claimant for two years, the Act does not support Employer's arguments.

Prior to the enactment of Act 1 of 1995, Act of February 22, 1995, P.L. 1, the hearing loss amendments to Section 306(c)(8)(i) of the Act, the last employer to which a claimant was cumulatively exposed to haz-

---

2. This Court's scope of review is limited to a determination of whether an error of law has been committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence of record. *Stephens v. Workmen's Compensation Appeal Board (St. Ignatius Nursing Home)*, 168 Pa.Cmwlth. 570, 651 A.2d 200 (1994).

3. Claimant explains that in making its erroneous calculation, the Board relied on the percentage for each ear on Claimant's speech discrimination scores that were 48% for the right ear and 76% for the left ear. If these numbers were plugged into the formula for calculating binaural hearing impairment under the AMA Guides, the result would be 52.66%. Dr. Froman specifically noted, however, that Claimant's audiograms show 33.75% impairment in the right ear and 24.38% in the left ear for a binaural hearing impairment of 25.94%, the percentage found by the WCJ.

ardous occupational noise was responsible for all work-related loss of hearing throughout the claimant's working life. *See NGK Metals v. Workmen's Compensation Appeal Board (Sellari),* 698 A.2d 1372 (Pa.Cmwlth.1997).[4] The Act 1 amendments, however, added Section 306(c)(8)(vi), which provides:

An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment or hearing impairment from non-occupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded.

77 P.S. § 513(8)(vi).

This Court in *USX Corporation v. Workers' Compensation Appeal Board (Rich),* 727 A.2d 165 (Pa.Cmwlth.1999), recently interpreted the above provision in the following way:

Because of the inclusion of the phrase "at or prior to the time of employment," [in Section 306(c)(8)(vi) ] a more reasonable interpretation is that this provision simply dispenses with the "last injurious exposure rule" that the last employer with which [a] [c]laimant is employed and is cumulatively exposed to hazardous occupational noise is responsible for all work-related loss of hearing throughout the claimant's working life, not just for the hearing loss caused by his employment with that specific employer. **In order for an employer not to be responsible for a hearing impairment**

under **[Section 306(c)(8)(vi) ], it must prove that the non-occupational cause of hearing loss...was present at or prior to the time of employment.**

*Id.* at 166–67 (emphasis added) (citation omitted). Although *Rich* dealt specifically with non-occupational hearing loss, the above reasoning is equally applicable when an employer attempts to avoid responsibility for previous work-related hearing loss.

Even if Employer here is a "new employer,"[5] then it would still be required to establish that at or prior to employment with it, Claimant suffered from previous occupational hearing loss with a previous employer. In other words, Employer, and not Claimant, would be required to show that prior to 1992, the date Employer alleges that it became Claimant's new Employer, Claimant suffered previous occupational hearing loss attributable to some prior employer. Employer introduced no such evidence, but merely offered the opinion of Dr. Busis, which was rejected by the WCJ, who believed that none of Claimant's hearing loss was directly attributable to exposure to hazardous occupational noise. Because Employer did not meet its burden of establishing the percentage of Claimant's hearing loss that was attributable to a prior employer, the Board and WCJ did not err in finding Employer and its insurer, Zurich, as responsible parties for Claimant's work-related hearing loss.

Employer's last contention, which is related to the previous one, is that Claimant failed to give it timely notice of his injury under Section 311 of the Act.[6] It argues

---

**4.** Claimant contends that because he filed his claim petition prior to the effective date of Act 1, that the present case should be governed by pre-Act 1 standards. Our Supreme Court, however, has held that where no award has been made, Act 1 applies to all claims pending at the time Act 1 became effective. *See Bible v. Department of Labor and Industry,* 548 Pa. 247, 696 A.2d 1149 (1997).

**5.** We also note in *LTV Steel Co., Inc. v. Workers' Compensation Appeal Board (Mozena),* 727 A.2d 160 (Pa.Cmwlth.1999), where we held that a mere successor in interest is not a

new employer for workers' compensation purposes. Although the record here is insufficient to determine whether Employer here is a "new employer" or merely a successor in interest to Anchor Hocking, it has no bearing on the present case where Employer has failed to prove that Claimant had any previous occupational hearing loss at or prior to the time of employment.

**6.** Section 311 provides:

Unless the employer shall have knowledge of the occurrence of the injury or

that although he gave notice to his previous employer and its previous predecessor, Anchor Hocking, it is a separate legal entity requiring separate notice. The record reflects, however, that the claim petition was filed on December 23, 1994, listing a date of injury as October 25, 1994. Employer filed an answer on February 17, 1995, less than 120 days from the date of injury listed in the claim petition, and, therefore, must have had notice of both the claim and the injury within sufficient time.

Accordingly, the order of the Board is affirmed except insofar as it increased the percentage of Claimant's binaural hearing impairment. That portion of the order is vacated and the percentage of hearing impairment found by the WCJ is reinstated.

### *O R D E R*

AND NOW, this 23rd day of July, 1999, that portion of the order of the Workers' Compensation Appeal Board at No. A97–5387, dated December 23, 1998, increasing the percentage of Claimant's binaural hearing impairment to 52.66% from 25.94%, as found by the WCJ, is vacated, and the percentage of hearing impairment found by the WCJ is reinstated. The remainder of the Board's order is affirmed.

unless the employee or someone in his behalf...shall give notice within twenty-one days after the injury, no compensation shall be due until such notice is given, and unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

77 P.S. § 631. In hearing loss cases, a claimant's duty to give notice does not occur until he or she is informed by a medical professional that his or her hearing loss is a result of exposure to occupational noise. *Sellari, supra.* In this case, the date of injury would be October 25, 1994, the one listed on the claim petition, when Claimant was informed by Dr. Froman that his hearing loss was work-related.