**E.W. BOWMAN, INC. and Vigilant Insurance Company,
Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WILSON and Great American Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 6, 2002.
Decided Oct. 23, 2002.

---

Joseph A. Fricker, Jr., Pittsburgh, for petitioners.

Christopher Pierson, Pittsburgh, for respondents.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

Vigilant Insurance Company (Vigilant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge's (WCJ) grant of William Wilson's (Claimant) claim petition and denial of Vigilant's joinder petition.[1]

On May 14, 1999, Claimant petitioned for benefits and alleged that he suffered occupational hearing loss due to exposure to hazardous occupational noise through the course of his employment with E.W. Bowman Inc. (Employer). Employer denied all allegations.

---

1. Vigilant sought to join Great American Insurance Company (Great American) and alleged that if Claimant sustained a compensable hearing loss "it occurred while Employer was insured by Additional Carrier." Petition for Joinder of Additional Defendant, June 28, 1999, at 1; Reproduced Record (R.R.) at 6a.

Claimant testified regarding his exposure to noise while working for Employer from November 26, 1973, through July 2, 1999, and presented the medical report of Michael C. Bell, M.D. (Dr. Bell), a board-certified otolaryngologist. Pursuant to the binaural formula provided in the American Council of Otolaryngology, Dr. Bell calculated Claimant's hearing impairment as "[m]onaural impairment in the right ear ... 20.625 percent; in the left 16.875 percent; with a binaural handicap of 17.5 percent." Medical Report of Dr. Michael C. Bell (Dr. Bell Report), March 26, 1999, at 3; R.R. at 141a. Within a reasonable degree of medical certainty, Dr. Bell diagnosed Claimant with moderate to severe sensorineural hearing loss in both ears as a result of his high levels of long term noise exposure while working for Employer. Dr. Bell Report at 2–3; R.R. at 140a–41a.

Vigilant and Employer presented the medical deposition of Douglas Chen, M.D. (Dr. Chen), board-certified in otolaryngology. Dr. Chen testified that he examined Claimant on August 3, 1999. Dr. Chen believed, within a reasonable degree of medical certainty, that Claimant suffered occupational induced hearing loss of less than ten percent.[2]

Great American presented the medical report of Sidney N. Busis, M.D. (Dr. Busis), board-certified in otolaryngology. Dr. Busis stated that Claimant had "a 20.63% hearing impairment on the right, a 13.13%

hearing impairment on the left, and a binaural hearing impairment of 14.37%." Medical Report of Dr. Sidney N. Busis (Dr. Busis Report), December 20, 1999, at 2; R.R. at 156a. Dr. Busis opined that Claimant's "audiometric test results are not typical of occupational noise induced hearing loss" and that "considering the noise studies and Mr. Wilson's [Claimant's] use of hearing protection devices beginning in 1995, it is unlikely that he was exposed to hazardous occupational noise during this time." Dr. Busis Report at 4; R.R. at 158a. Dr. Busis concluded that "[a]lthough it is possible that he [Claimant] had some occupational noise-induced hearing loss in his early years of employment, his present hearing loss is more likely due to causes other than occupational noise exposure, causes such as hunting, aging, heredity, and possibly systemic disease...." Dr. Busis Report at 4; R.R. at 158a.

The WCJ granted Claimant's petition and made the following relevant finding of fact:

9. I've carefully considered all the evidence of record, both medical and lay and find as a fact that as of May 14, 1999, the date of filing the Claim Petition, the claimant had suffered a 14.37% binaural hearing loss as a result of his long-term exposure to hazardous occupational noise while in the employment of the defendant. In making this Find-

---

**2.** Joseph A. Fricker, Jr., Vigilant's and Employer's attorney to Dr. Chen:

Q: Now, Doctor, if you use the binaural hearing impairment given by Dr. Busis as 14.37 percent, which you indicated to be the most accurate assessment of his hearing loss, what would his hearing loss percentage be if you deduct for age?

A: Age was allocated to be 6.8 percent, according to Dr. Busis calculations, and the remainder would be related to occupational, non-occupational noise exposure, and

that comes out to approximately 6.5 percent.

Q: And although I recognize that I'm pointing out the obvious, Doctor, that would be less than the 10 percent threshold required under Pennsylvania law; is the correct?

A: That's correct.

Deposition of Dr. Douglas Chen (Dr. Chen Deposition), January 20, 2000, at 18; R.R. at 207a.

ing of Fact, I rely on the competent, credible and substantial medical opinion rendered in this matter by Dr. Bell. To the issue of 14.37% loss, I am crediting Dr. Busis' testing. Dr. Busis and Dr. Chen both specifically addressed which test would most accurately reflect the claimant's hearing loss and it was the opinion of those physicians that the loss would be best represented by the test. There [sic] reasoning is logical. Dr. Bell did not specifically [sic] that issue in his report; consequently, he offers no opinion contrary to the opinions of Dr. Busis and Dr. Chen on that issue. Dr. Chen specifically relied on ANSI studies to determine what percentage of hearing loss was attributable to aging. Dr. Chen's opinion in this regard cannot be adopted by the undersigned. The use of the ANSI Tables is barred as a matter of law. Dr. Chen admitted in his testimony that he could not determine the percentage loss caused by any other non-occupational factors.

I also find as a fact that the claimant's long-term hazardous noise exposure extended to his last day of work on July 2, 1999. The noise study test conducted on February 19, 1999, indicates that the claimant was exposed to hazardous noise in February of 1999. As noted in Conclusion of Law No. 3, in order to escape liability for hearing loss, the *employer* must establish that the hearing loss occurred prior to employment. No evidence has been presented that any of the claimant's hearing loss occurred prior to 1973. (emphasis in original).

WCJ's Decision, October 2, 2000, Finding of Fact No. 9 at 6. Also, the WCJ concluded that Vigilant failed to sustain its burden that it was not liable for Claimant's hearing loss.

The Board affirmed and concluded that "the WCJ did not err by not deeming the allegations in the Joinder Petition admitted or by not precluding Great American from presenting a defense to those allegations." Board's Decision, March 7, 2002, at 6.

### A. Was Claimant's Petition Untimely?

■ Vigilant contends [3] that Claimant's petition was untimely because it was not filed within three years from date of Claimant's last exposure to hazardous noise and that the medical evidence established that Claimant did not sustain a hearing loss [4] within three years of the filing of his claim petition on May 14, 1999.[5]

Section 306(c)(8)(viii) of the Workers' Compensation Act (Act)[6], 77 P.S. § 513(8)(viii) provides:

Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after

---

3. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

4. In a claim for occupational noise-induced hearing loss, the claimant must shoulder the burden of proving not only the degree of hearing loss but also that the hearing loss was caused by the claimant's employment. No presumption exists in favor of the claimant on the issue of causation. *Rockwell International v. Workers' Compensation Appeal Board (Sutton)*, 736 A.2d 742 (Pa.Cmwlth.1999).

5. This Court has foregone the order of Vigilant's arguments.

6. Act of June 2, 1915, P.L. 736, *as amended*.

the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought.

In the present controversy, the WCJ found Dr. Bell credible that Claimant suffered a hearing loss secondary to his cumulative exposure to loud noise throughout his employment with Employer from November 26, 1973, through July 2, 1999, the date of his retirement. On May 14, 1999, Claimant filed his claim petition and alleged that he suffered a hearing loss on May 14, 1999, well within three-years from the last date of his exposure to hazardous occupational noise. The claim petition was timely filed.

Vigilant also asserts that Claimant was not exposed to hazardous noise because he wore hearing protection during the last five years of his employment. This is of no consequence.

In *Meadville Forging Company v. Workers' Compensation Appeal Board (Artman)*, 747 A.2d 958 (Pa.Cmwlth.2000), James Artman (Artman) alleged that he sustained a binaural hearing loss as a result of his exposure to occupational noise. Meadville Forging Company (Meadville) denied the allegations and alleged that Artman's claim petition was untimely because it was filed more than three years after his last exposure to hazardous noise. Artman testified that he wore earplugs when he started working in Meadville's hammer shop. Vincent A. Snee, an industrial hygienist, testified that Artman "wore hearing protection with a NRR [Noise Reduction Rating] of 29 while working [and] ... hypothetically, that if someone were exposed to 90.4 decibels, with hearing protection the exposure would be 68.4 decibels ... which is below ... OSHA limits." *Meadville Forging*, 747 A.2d at 960. The workers' compensation judge awarded benefits and the board affirmed.

On appeal, this Court affirmed and noted:

Employer [Meadville] contends that it was error to not take into consideration claimant's [Artman's] use of hearing protection devices in determining whether he had long-term exposure to hazardous noise.... Because the Act defines what is hazardous noise as that term is used in table G–16 [of OSHA Occupational Noise Expose Standards], and hazardous noise as used in that provision is defined as without the use of hearing protection devices, whether a person is exposed to long-term exposure to hazardous noise is to be measured without the use of hearing protection devices.... Claimant medically established a hearing loss ... (footnote omitted)

*Id.* at 961. As in *Meadville*, here, the WCJ properly determined that Claimant suffered a hearing loss caused by occupational noise and that Employer failed to establish that his claim was filed more than three years after his last exposure to hazardous noise.

### B. Was Vigilant Liable For Claimant's Hearing Loss?

Vigilant contends that the WCJ erroneously rejected its evidence that Claimant's occupational hearing loss occurred prior to Vigilant's commencement of insurance coverage pursuant to Section 306(c)(8)(vi) of the Act, 77 P.S. § 513(8)(vi).

Section 306(c)(8)(vi), 77 P.S. § 513(8)(vi) provides:

An employer shall be liable only for the hearing impairment caused by such employer. *If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable*

for the hearing impairment so established whether or not compensation has previously been paid or awarded. (emphasis added).

Vigilant's argument is two-fold: firstly, that that the term "employer" as utilized in Section 306(c)(8)(vi) is synonymous with the term "insurer", and secondly, that Section 306(c)(8)(vi) eliminated the "Last Injurious Exposure Rule." [7]

Vigilant asserts that because the term "employer" is not defined in Article III of the Act the definition appearing in Section 401 of the Act (Article IV), 77 P.S. § 701 is controlling. Pursuant to Section 401 the term "employer" "shall mean the employer as defined in article one of this act, ... *or his insurer* if such insurer has assumed the employer's liability ...." (emphasis added). Vigilant cites our Pennsylvania Supreme Court's decision in *Brown v. Travelers Insurance Company*, 434 Pa. 507, 254 A.2d 27 (1969) for support of its position.

In *Brown*, our Pennsylvania Supreme Court reviewed Section 303 of the Act, 77 P.S. § 481 and determined that insurance carriers enjoy the same immunity from liability under Section 303 as employers. The Pennsylvania Supreme Court stated:

[S]ince 319 is part of Article III, this destroys the appellant's [Kenneth C. Brown's] argument that the Article I definition of 'employer' applies through-

out Article III. Instead, we are convinced that the legislature intended that the broader definition which clearly applies in Section 319 should also apply in Section 303 establishing the employer's immunity.

*Id.* at 513–14, 254 A.2d at 29.

This Court does not believe that *Brown* supports Vigilant's argument that the term "employer" is interchangeable with the term "insurer" in Section 306(c)(8)(vi). As noted there, the Supreme Court's focus was on Section 303 of the Act, 77 P.S. § 481 and not Section 306(c)(8)(vi). Also, Section 303 of the Act was amended by the Act of December 5, 1974, P.L. 784 and this amendment rewrote that part of Section 303 that the Supreme Court interpreted in *Brown*. *See* Historical and Statutory Notes to Section 303 of the Act, 77 P.S. § 481.

Also, Vigilant asserts that pursuant to this Court's interpretation of Section 306(c)(8)(vi) in *Anchor Hocking* the record reflects that Claimant sustained no compensable hearing loss from August 2, 1998, the date of commencement of Vigilant's coverage, through July 2, 1999, the date Claimant retired.

In *Anchor Hocking* this Court emphasized that the employer, not the claimant, was required to show that prior to the date it became the "new" employer, the claimant sustained a previous hearing loss at-

---

**7.** In *Anchor Hocking Packaging Company v. Workers' Compensation Appeal Board (Martin)*, 735 A.2d 157, 160 (Pa.Cmwlth.1999), this Court revisited our decision in *USX Corporation v. Workers' Compensation Appeal Board (Rich)*, 727 A.2d 165 (Pa.Cmwlth.1999) where we interpreted Section 306(c)(8)(vi) of the Act and quoted from *Rich*:

Because of the inclusion of the phrase 'at or prior to the time of employment,' [in Section 306(c)(8)(vi) ] a more reasonable interpretation is that this provision simply dispenses with the 'last injurious exposure

rule' that the last employer with which [a] [c]laimant is employed and is cumulatively exposed to a hazardous occupational noise is responsible for all work-related loss of hearing throughout the claimant's working life, not just the hearing loss caused by his employment with that specific employer. *In order for an employer not to be responsible for a hearing impairment under [Section 306(c)(8)(vi) ], it must prove that the non-occupational cause of hearing loss ... was present at or prior to the time of employment.* Id. at 166–67. (emphasis added).

tributable to a prior employer. *See Anchor Hocking*, 735 A.2d at 160.

Here, no such evidence was introduced. Vigilant presented the opinion of Dr. Chen, which was rejected by the WCJ, in part because Dr. Chen relied on unacceptable ANSI Tables to calculate Claimant's hearing loss due to aging[8] and that Dr. Chen was unable to determine the percentage of Claimant's hearing loss from other non-occupational factors. *See* WCJ's F.F. No. 9 and Conclusion of Law No. 7. The WCJ also rejected the opinion of Dr. Busis, except to the degree of Claimant's binaural hearing impairment. On the other hand, the WCJ credited Dr. Bell's opinion that Claimant suffered an ongoing work-related hearing loss throughout his employment with Employer.

Finally, Section 306(c)(8)(ix) of the Act provides:

> The date of injury for occupational hearing loss under sub-clause (i) of this clause shall be the earlier of the date on which the claim is filed or the last date of long-term exposure to hazardous occupational noise while in the employ of the employer against whom the claim is filed.

The WCJ correctly applied the earlier date of Claimant's injury enunciated under Section 306(c)(8)(ix) as May 14, 1999, the date of the filing of the claim petition, as opposed to July 2, 1999, the date of Claimant's last exposure to hazardous noise.

### C. Joinder And Whether Liability Should Be Apportioned?

■ Alternatively, Vigilant contends that any liability for Claimant's hearing loss should be apportioned between Vigilant and Great American. Specifically, Vigilant asserts that equity required the apportionment of liability based upon Dr. Chen's testimony and the audiograms that established no significant difference in Claimant's hearing loss after Vigilant provided insurance coverage in 1998.

Section 322 of the Act, 77 P.S. § 677 provides that "[n]othing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, *where an employe suffers from more than one injury while in the employ of more than one employer ....*" (emphasis added).

A review of Section 322 clearly indicates that the General Assembly intended Section 322 of the Act to apply to situations where an employee suffers more than one injury. Here, Claimant sustained a single injury, not two, while employed by Employer, and also, the WCJ accepted the medical evidence that Claimant's hearing loss was due to continuous exposure to hazardous occupational noise. Therefore, the WCJ and Board properly determined that Vigilant was not entitled to a pro rata apportionment.[9]

---

**8.** In *USX Corporation v. Workers' Compensation Appeal Board (Rich)*, 727 A.2d 165, 168 (Pa.Cmwlth.1999), this Court noted that "[b]ecause the General Assembly knew how to provide for a deduction for normal aging and did not, and the legislature specifically provided that the AMA Guidelines were to be used ... as a standard of measurement ... [for] age reduction."

**9.** To the contrary, in *Franklin Steel Company v. Workmen's Compensation Appeal Board (Clark and Liberty Mutual)*, 665 A.2d 1310, 1313 (Pa.Cmwlth.1995), Robert C. Clark (Clark) suffered two separate injuries while employed by Franklin Steel Company who was insured by two separate insurance companies, the PMA Group and Liberty Mutual Insurance Company. The workers' compensation judge determined that PMA was not "entitled to an order directing Liberty Mutual to pay some share of ... [Clark's] total disability benefits because PMA did not prove that ... Clark ... [was] no longer disabled as a result of the work injury for which it is liable." *Id.* at 1312. The board affirmed.

### D. Were The Allegations In The Joinder Petition Deemed Admitted?

Lastly, Vigilant contends that it alleged in its joinder petition that if Claimant sustained a compensable hearing loss Great American was the responsible insurance carrier. Vigilant asserts that because Great American's answer was untimely the allegations in the joinder petition were admitted as true and that Great American should have been precluded from entering a defense.

Section 416 of the Act, 77 P.S. § 821 provides:

> Within twenty days after a copy of any claim petition or other petition has been served upon an adverse party, he may file with the department or its workers' compensation judge an answer in the form prescribed by the department. Every fact alleged in a *claim petition* not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him. *But the failure of any party or all of them to deny a fact alleged in any other petition shall not preclude the workers' compensation judge before whom the petition is heard from requiring, of his own motion, proof of such fact.* If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented. (emphasis added).

In *Neidlinger v. Workers' Compensation Appeal Board (Quaker Alloy/CMI International)*, 798 A.2d 334 (Pa.Cmwlth. 2002), Earl Neidlinger (Neidlinger) petitioned for compensation benefits and alleged that he suffered from silicosis caused by "his long exposure to dust and particulate matters during employment with Quaker Alloy as a floor molder from 1959 to February 25, 1994." *Id.* at 336 (footnote omitted). Quaker Alloy denied the allegations and stated among other things that Neidlinger filed the claim petition against the wrong party. On May 26, 1999, Quaker Alloy petitioned to join CMI International and its insurance carrier as additional defendants. "Quaker Alloy alleged that CMI International owned Quaker Alloy while ... [Neidlinger] was employed at the Quaker Alloy facility and that Hayes–Lemmerz, Inc. thereafter purchased CMI International." *Id.* at 336. On July 16, 1999, CMI International/Hayes–Lemmerz, Inc.'s (CMI/Hayes) filed an untimely answer pursuant to Section 416 of the Act. Neidlinger contended that the allegations in the claim petition and the joinder petition were deemed admitted due to CMI/Hayes' failure to timely answer the joinder petition. The workers' compensation judge granted the joinder petition and denied Neidlinger's claim petition.

On appeal, this Court reiterated that the timeliness of an answer is only applicable to a claim petition, not to "any other petition" such as a joinder petition:

> Unlike this matter involving the late answer to the petition for joinder, *Yellow Freight [System, Inc. v. Workmen's*

On appeal this Court reviewed Section 322 of the Act and determined that "the [b]oard erred as a matter of law in ordering that PMA continue to pay all of ... [Clark's] total disability benefits" and that "PMA ... [was] entitled to an order requiring that Liberty Mutual pay its pro-rata share of ... [Clark's]

total disability benefits." *Id.* at 1314. This Court allowed apportionment of liability under Section 322 because there were two distinct work-related injuries to separate body parts that contributed to Clark's disability, at times when two different insurance carriers provided coverage.

**455**

*Compensation Appeal Board*, 56 Pa. Cmwlth. 1, 423 A.2d 1125 (1981)] involved the late answer to the *claim petition*. Contrary to ... Neidlinger's assertion, Yellow Freight does not stand for the proposition that the allegations in the claim petition are deemed admitted based on the late answer to the petition for joinder. (emphasis in original).

*Id.* at 338.

Further, 34 Pa.Code § 131.36 (Joinder) provides:

(a) A party desiring to join another defendant to assert a claim relevant to the pending petition may do so as a matter of right by filing a petition for joinder.

(b) A petition for joinder shall set forth the identity of employers and *insurance carriers* sought to be joined and the reasons for joining a particular employer or *insurance carrier* as well as the specific facts and the legal basis for the joinder. (emphasis added).

. . . .

(f) An answer to a petition for joinder may include a motion to strike and *may* be filed within 15 days following service of the petition for joinder by the Bureau. (emphasis added).

. . . .

(i) After joinder, the original petition shall be deemed to be amended to assert a claim of the claimant against an additional defendant. The additional defendant is liable to any other party as the referee orders. The additional defendant shall have the same rights and responsibilities under this chapter as the original defendant.

■ A scrutiny of 34 Pa.Code § 131.36 clearly reflects that the additional defendant's duty to file an answer is permissive, not mandatory. Therefore, Great American's failure to timely file an answer to the joinder petition did not result in deemed admissions to the allegations in Vigilant's joinder petition or that Great American, whose joinder was sought, was precluded from presenting any evidence in its defense.

Accordingly, we affirm.

### *ORDER*

AND NOW, this 23rd day of October, 2002, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.